## Laura Cornetta's Case.

No. 06-P-9.

Suffolk. September 22, 2006. - January 25, 2007.

Present: Perretta, McHugh, & Cohen, JJ.

*Workers' Compensation Act,* Injuries to which act applies, Proximate cause, Decision of Industrial Accident Reviewing Board. *Administrative Law,* Agency's interpretation of statute.

This court concluded that the reviewing board of the Department of Industrial Accidents, in affirming an award of permanent and total incapacity benefits pursuant to G. L. c. 152, § 34A, to the employee for a work-related emotional disability, correctly viewed the case as one compensable without reference to the third sentence of G. L. c. 152, § 1(7A), which applies only to those mental or emotional disabilities that are not consequential to work-related physical injury. [112-119]

Appeal from a decision of the Industrial Accident Reviewing Board.

*John J. Canniff* for the insurer.

*James J. Collins* (*Peter H. Collins* with him) for the employee.

Cohen, J. In this workers' compensation case, an administrative judge awarded Laura Cornetta (employee) permanent and total incapacity benefits, pursuant to G. L. c. 152, § 34A, for a work-related emotional disability. On appeal by the self-insurer,[1] the reviewing board of the Department of Industrial Accidents (board) affirmed, viewing the employee's disabling psychological condition as "subsequent to" physical trauma sustained in an incident on May 22, 1997, when the employee, a Spanish teacher at Nashoba Valley Technical High School, was assaulted by a student. Even though the employee had a pre-existing psychological condition unrelated to any event at work, the

[1]The Massachusetts Education & Government Self-Insurer Group.

board concluded that she was entitled to benefits under the "combination injury" provision contained in the fourth sentence of G. L. c. 152, § 1(7A),[2] based upon the administrative judge's finding that "the [e]mployee's compensable injury of May 22, 1997, remains a major but not necessarily predominant cause" of the employee's ongoing emotional disability.

The self-insurer now appeals to this court, contending that the board has long misinterpreted § 1(7A), insofar as that section pertains to claims for mental or emotional disability. For nearly ten years, the board has read the third sentence of § 1(7A), which, since 1986, has set out a heightened standard of causation for claims for mental or emotional disabilities,[3] to relate only to claims arising from "pure" mental injuries — those triggered by employment-related circumstances but not the result of physical injury. Accordingly, in cases where an emotional disability is found to result from work-related physical trauma, the board does not apply the heightened standard and, instead, treats the claim like any other. In the absence of other causative factors, an employee whose emotional disability is the result of a work-related physical injury will be awarded compensation upon a simple demonstration of "but for" causation between the injury and the employee's condition; if a non-compensable pre-existing condition is involved, the case will be analyzed under the "combination injury" standard set out in the fourth sentence of § 1(7A). See generally Nason, Koziol, & Wall, Workers' Compensation § 9.9 (3d ed. 2003).

The self-insurer argues that the board's distinction between claims arising from "pure" mental injuries and those stemming from physical trauma is an error of law, and urges this court to

---

[2]The fourth sentence of § 1(7A) reads: "If a compensable injury or disease combines with a pre-existing condition, which resulted from an injury or disease not compensable under this chapter, to cause or prolong disability or a need for treatment, the resultant condition shall be compensable only to the extent such compensable injury or disease remains a major but not necessarily predominant cause of disability or need for treatment." G. L. c. 152, § 1(7A), as amended through St. 1991, c. 398, § 14.

[3]As we explain in greater detail below, the third sentence of § 1(7A) has undergone a number of changes since it first was enacted in 1985. Since 1991, it has read: "Personal injuries shall include mental or emotional disabilities only where the *predominant* contributing cause of such disability is an event or series of events occurring within any employment" (emphasis added).

construe the third sentence of § 1(7A) as imposing the heightened standard of causation upon all claims of mental or emotional disability. For the reasons that follow, we reject the self-insurer's interpretation and accept that of the board. There being no merit to the self-insurer's remaining arguments, we affirm the award of compensation.

*Facts.* We take the facts from the findings made by the administrative judge in his two decisions in this case.[4] On May 22, 1997, the employee, who was then employed as a Spanish teacher at Nashoba Valley Technical High School, was leaving the premises at the end of the school day. She observed a female student smoking a cigarette nearby in violation of the school's no-smoking policy. Having been instructed to enforce the no-smoking policy, the employee told the student to extinguish the cigarette. The student refused to do so, and also refused to identify herself. When the employee directed the student to accompany her to the office, the student again refused and began to verbally abuse the employee using foul language.

The employee then attempted to pick up a backpack at the student's feet, to prevent the student from leaving. As she did so, the student began punching her and attempted to push her down the stairs. The employee asked another student to go into the building and get help. It was only when a supervisor arrived on the scene that the assault ceased. The employee immediately left the premises and went home.

Approximately six weeks earlier, the employee had sustained a fracture of her right wrist unrelated to employment. During the May 22, 1997, incident, the employee put her right arm up in front of her face in an attempt to ward off the student's blows. Although the employee came in to work the following day, she experienced increased pain in the area of her right wrist, left school early, and sought treatment with her primary care physician.

---

[4] The administrative judge first heard the employee's claim for temporary partial incapacity benefits pursuant to G. L. c. 152, § 35. The same judge later heard the employee's claim for benefits under G. L. c. 152, § 34A, for permanent and total disability. The administrative judge's first decision and the report of the impartial medical examiner upon which it was based were entered into the record at the § 34A hearing and are included in the record on appeal.

The findings are silent as to the precise effect of the assault on the employee's right wrist. However, the employee, who was found credible by the administrative judge, testified that on the day after the incident, she found it necessary to see the school nurse a couple of times to obtain Advil for the pain in her wrist and went to the doctor because she was concerned that she had refractured it. It does not appear from the record that her wrist was, in fact, refractured, but there appears to be no dispute that it was injured in the attack by the student, as reflected in the administrative judge's reference to a psychologist's report, submitted by the self-insurer, that speaks of a "contusion/ sprain" of the employee's right wrist during the incident of May 22, 1997.[5]

In the following months, the employee's mental health declined significantly. Although she had experienced bouts of anxiety and depression before the May 22, 1997, incident, her depression became more severe and lasted for longer periods thereafter. She continued working at Nashoba Valley Technical High School through the end of the school year, but, perceiving a lack of support from the administration in the aftermath of the assault, left her position in June of 1997.

In September, 1997, the employee began a job as a Spanish teacher at Martha's Vineyard Regional High School, but resigned after approximately one month. At the start of the following year, in September, 1998, the employee took a part-time teaching position at Wakefield High School, but left after one day. In October, 1998, she began work as a part-time, first grade teaching assistant, working a maximum of fourteen hours per week. She remained in that job until May 20, 1999. From July 10, 1999, through October 23, 1999, the employee received unemployment compensation. She then worked briefly in January and February of 2000, as a part-time teacher's aide in Concord, but has not worked since. As of the date of the second hearing, the employee remained under medical care and continued to take medication for anxiety and depression.

---

[5] In this report, the psychologist disputed the existence of any causal or aggravating relationship between the wrist injury and the employee's subsequent emotional problems, instead attributing her mental disability solely to nonwork-related pre-existing major depressive disorder and posttraumatic stress disorder.

*Decisions below.* The employee's claim for partial incapacity benefits, pursuant to G. L. c. 152, § 35, was allowed by the administrative judge in a decision issued on February 23, 2001. The administrative judge found that "the [e]mployee sustained a work-related injury when she was assaulted by a student on May 22, 1997," and, adopting the opinion of the impartial medical examiner (IME), found further that, as a result, the employee suffered an aggravation of "underlying [m]ajor [d]epression, recurrent condition" and developed a "[s]pecific [p]hobia" related to teaching and teenagers. The administrative judge found that the aggravation of the employee's depression was "a major cause" and the specific phobia "the predominant cause" of the employee's partial disability and need for treatment. The self-insurer appealed the § 35 decision to the board, but withdrew the appeal before the case was decided.

Later, when the employee's § 35 benefits were due to expire, she sought permanent, total incapacity benefits, pursuant to G. L. c. 152, § 34A. In the course of reevaluation by the same IME, the employee disclosed a new fact — that many years earlier she had been raped by a teacher when she attended high school in Switzerland. According to the IME, this additional history supported a revised diagnosis of dormant posttraumatic stress disorder that was reactivated by the May 22, 1997, incident. The IME also concluded that, by the time of his second examination, the employee's specific phobia no longer persisted and was not a significant diagnosis. He agreed that the employee should be considered permanently and totally disabled, but was of the opinion that the incident of May 22, 1997, had ceased to be the primary cause of the employee's current emotional disability, although it remained a contributing cause, along with other factors.

In a decision dated July 15, 2004, the administrative judge ordered the payment of § 34A benefits. Adopting the IME's updated medical opinion, the administrative judge found that the employee's condition precluded her from performing any meaningful work and that she was permanently and totally disabled. He also found that "the [e]mployee's permanent and total incapacity and disability are causally related to her work related injury of May 22, 1997," and, applying the "combina-

tion injury" standard in the fourth sentence of G. L. c. 152, § 1(7A), determined that "the [e]mployee's compensable injury of May 22, 1997[,] remained a major but not necessarily predominant cause of her disability or need for treatment," thus entitling her to compensation.

The board affirmed the G. L. c. 152, § 34A, decision, explaining that the employee's emotional disability stemmed from physical trauma — being struck by the student and sustaining the wrist injury that resulted in medical care. That being the case, the board considered the employee's claim to be exempt from the third sentence of G. L. c. 152, § 1(7A), even though the physical consequences of the assault were not, themselves, incapacitating. Like the administrative judge, the board determined that the claim was governed by the "combination injury" provision set out in the fourth sentence of § 1(7A), as it involved the reactivation of a pre-existing, noncompensable psychological condition. Because the injury sustained at work was found to be a "major cause" of the employee's emotional disability, the board concluded that she remained entitled to benefits.

*Discussion.* In determining the meaning and intended scope of the third sentence of G. L. c. 152, § 1(7A), we are guided by familiar principles of statutory interpretation. "[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). We "must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense." *The Harvard Crimson, Inc.* v. *President & Fellows of Harvard College*, 445 Mass. 745, 749 (2006). We begin "by looking at the words of the statute — but not in isolation from the statute's purpose or divorced from reason and common sense." *DiGiacomo* v. *Metropolitan Property & Cas. Ins. Co.*, 66 Mass. App. Ct. 343, 346 (2006). "[T]he ultimate goal is to

determine and effectuate the intent of the Legislature in the situation presented." *Ibid.*

In its current iteration (which is the version applicable to the employee's claim), G. L. c. 152, § 1(7A), contains, in its entirety, five sentences, which we number for convenience:

> "[1] 'Personal injury' includes infectious or contagious diseases if the nature of the employment is such that the hazard of contracting such diseases by an employee is inherent in the employment. [2] 'Personal injury' shall not include any injury resulting from an employee's purely voluntary participation in any recreational activity, including but not limited to athletic events, parties, and picnics, even though the employer pays some or all of the cost thereof. [3] Personal injuries shall include mental or emotional disabilities only where the predominant contributing cause of such disability is an event or series of events occurring within any employment. [4] If a compensable injury or disease combines with a pre-existing condition, which resulted from an injury or disease not compensable under this chapter, to cause or prolong disability or a need for treatment, the resultant condition shall be compensable only to the extent such compensable injury or disease remains a major but not necessarily predominant cause of disability or need for treatment. [5] No mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury within the meaning of this chapter."

The self-insurer's position is based solely upon the wording of the third sentence, which does not directly differentiate between mental and emotional disabilities that are consequential to work-related physical injury, and mental and emotional disabilities that arise from nonphysical, work-related trauma. However, as the board concluded nearly ten years ago in its decision in *Cirignano* v. *Globe Nickle Plating*, 11 Mass. Workers' Comp. Rep. 17, 22 (1997), such differentiation may be inferred from the use of the phrase "event or series of events"

when considered in the context of the legal setting that existed when the third sentence was enacted.[6]

The various sentences of § 1(7A) were adopted piecemeal over time and are best understood not as an all-encompassing definition of compensable "personal injury," but, rather, as a series of legislative responses to specific court decisions and perceived needs for targeted reform. As explained in *Cirignano*, *supra* at 19, § 1(7A) did not exist when the workers' compensation statute first came into being in 1912. Then, as now, the overarching test of compensability was to be found in G. L. c. 152, § 26, which states that "[i]f an employee . . . receives a personal injury arising out of and in the course of his employment, . . . he shall be paid compensation."

For many years, the term "personal injury" was left simply to judicial interpretation. Then, in 1941, the Legislature first inserted G. L. c. 152, § 1(7A), see St. 1941, c. 437, which, at the time, consisted of a single sentence: " 'Personal injury' includes infectious or contagious diseases if the nature of the employment is such that the hazard of contracting such diseases by an employee is inherent in the employment." By enacting this provision, the Legislature effectively overruled the Supreme Judicial Court's decision in *Smith's Case*, 307 Mass. 516 (1940), which had denied compensation to a worker who contracted tuberculosis at his job in a municipal hospital, on the ground that "a disease of mind or body which arises in the course of employment" is not a compensable "personal injury." *Id.* at 517.

Much later, as part of the comprehensive reform of the statute, effectuated by chapter 572 of the Acts of 1985, the Legislature added the second sentence of G. L. c. 152, § 1(7A), again in apparent response to a court decision. The Supreme Judicial Court had held in *Kemp's Case*, 386 Mass. 730 (1982), that the compensability of injuries sustained during a recreational activ-

[6]At issue in *Cirignano* was the previous version of the sentence, enacted in 1986, see St. 1986, c. 662, § 6, which used the word "significant" rather than "predominant." *Cirignano* was a split decision in which the two-member majority opinion established the board's position that the third sentence has a limited reach. *Cirignano, supra*. The dissent, by a third member of the panel, would have adopted the more expansive interpretation urged by the self-insurer in the present case. *Id.* at 24.

ity connected to employment was to be determined on a case-by-case basis using a variety of factors. *Id.* at 733. By inserting the second sentence, the Legislature replaced this approach with a statutory test focused on the voluntariness of the employee's participation: " 'Personal injury' shall not include any injury resulting from an employee's purely voluntary participation in any recreational activity, including but not limited to athletic events, parties, and picnics, even though the employer pays some or all of the cost thereof." St. 1985, c. 572, § 11.

The 1985 reform legislation also added the original version of the third sentence of § 1(7A), which then read: "Personal injuries shall include mental or emotional disabilities only where a contributing cause of such disability is an event or series of events occurring within the employment." See St. 1985, c. 572, § 11. Again, it appears that the Legislature was responding to judicial developments. It had long been established that "personal injury" included mental and nervous disorders arising out of employment where such injuries resulted from physical trauma, no matter how slight the impact. See, e.g., *Hunnewell's Case*, 220 Mass. 351, 355-356 (1915).[7] However, in a series of cases decided between 1978 and 1985, the Supreme Judicial Court went farther, holding that mental or emotional disabilities unrelated to physical injury were compensable if causally connected to mentally traumatic events arising out of employment. See *Fitzgibbon's Case*, 374 Mass. 633, 634-635, 637-638 (1978) (emotional distress and eventual suicide resulting from specific stressful event at work); *Albanese's Case*, 378 Mass. 14, 18 (1979) (emotional condition arising from a series of identifiable

---

[7] In *Hunnewell*, the employee developed a neurotic condition — hysterical blindness — after suffering a slight injury to his eye at work. 220 Mass. at 555. The court held, by analogy to tort law, that he was entitled to compensation for "injuries flowing as a proximate result from an actual physical impact received . . . in the course of and arising out of employment." *Id.* at 556. To the same effect was *McIsaac's Case*, 260 Mass. 67, 68-69 (1929), in which the employee developed an anxiety disorder — fainting spells — after feeling a snapping pain in his chest and falling while lifting beer cases at work. Medical evidence established that "he had an ordinary fall with a tear of muscles, which frightened him afterwards." *Id.* at 69. Because his subsequent fainting spells were the product of fear brought on by his injury, his emotional condition was deemed compensable, even though it was not the result of continued pain or physical disability. *Ibid.*

stressful events at work occurring over a relatively brief period of time); *Foley* v. *Polaroid Corp.*, 381 Mass. 545, 550 (1980) (claim against employer for intentional infliction of emotional distress compensable under the statute and not actionable in tort); *Kelly's Case*, 394 Mass. 684, 684-685, 687 (1985) (emotional disability resulting from notification of layoff and transfer).

Left open, however, was whether proof of one or more specific stressful incidents was always essential to recovery in such cases. See *Albanese's Case, supra* at 18 n.4. By providing in the new third sentence of § 1(7A) that "a contributing cause" of the mental or emotional disability had to be "an event or series of events in the workplace," the Legislature resolved this issue in the affirmative. St. 1985. c. 572, § 11. See generally Nason, Koziol, & Wall, Workers' Compensation § 9.9. Thus, we can infer, as did the board, that "the reference to 'an event or series of events' at work, is indicative of the Legislature's intent to set the ground rules and standard for *purely mental* injuries produced *directly* from work place circumstances" (emphasis original).[8] *Cirignano*, 11 Mass. Workers' Comp. Rep. at 22.

Later amendments to G. L. c. 152, § 1(7A), are consistent with this interpretation. In 1986, the Legislature inserted the word "significant" in the third sentence, so that it then read: "Personal injuries shall include mental or emotional disabilities only where a significant contributing cause of such disability [is] an event or series of events occurring within the employment." See St. 1986, c. 662, § 6. While this amendment raised the standard of causation in cases governed by the third sentence, there is nothing to suggest that the Legislature intended to expand the sentence to include mental and emotional disabilities consequential to physical injuries.

---

[8]Significantly, the use of the word "event" is unusual in the Act, which typically is framed in terms of an "injury" occurring within employment, and not in terms of any work-related incident. See, e.g., G. L. c. 152, §§ 6 (notice of "injury"), 24 (waiver of common-law right as to "injury"), 26 (right of compensation for industrial "injury"), 26A (compensability of death by suicide "due to the injury"). It is reasonable to assume that the Legislature employed this word to reflect the terminology of the caselaw addressing the compensability of emotional disability unconnected with physical injury.

To the contrary, the 1986 legislation remained focused upon mental and emotional disabilities that were directly attributable to work-related circumstances but not associated with physical trauma. The same chapter and section that amended the third sentence to include the word "significant" also added what is now the fifth (but was then the fourth) sentence of G. L. c. 152, § 1(7A), providing: "No mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury within the meaning of this chapter." St. 1986, c. 662, § 6. As the effect of this new sentence was to overrule *Kelly's Case, supra,* it is again evident that the Legislature's objective in 1986 was to rein in compensation for work-related mental and emotional disabilities unassociated with physical injury.

In the next wave of workers' compensation reform that occurred in 1991, the third sentence was amended to further heighten the standard of causation by replacing the word "significant" with "predominant." St. 1991, c. 398, § 14. This amendment resulted in the provision as we now know it, which states: " 'Personal injuries' shall include mental or emotional disabilities only where the predominant contributing cause of such disability is an event or series of events occurring within any employment." At the same time, the Legislature also inserted what is now the fourth sentence of G. L. c. 152, § 1(7A), the so-called "combination injury" provision. This provision states: "If a compensable injury or disease combines with a pre-existing condition, which resulted from an injury or disease not compensable under this chapter, to cause or prolong disability or a need for treatment, the resultant condition shall be compensable only to the extent such compensable injury or disease remains a major but not necessarily predominant cause of disability or need for treatment." St. 1991, c. 398, § 14. However, neither of these alterations to G. L. c. 152, § 1(7A), expanded the reach of the third sentence to cover emotional disabilities flowing from physical injuries.

We therefore are persuaded that the meaning and scope of the third sentence of § 1(7A), informed by "the cause of its enact-

ment, the mischief or imperfection to be remedied and the main object to be accomplished," *Hanlon* v. *Rollins*, 286 Mass. at 447, is that adopted by the board: the third sentence applies only to those mental or emotional disabilities that are not consequential to work-related physical injury. To be sure, the sentence could have been phrased more artfully to effectuate this goal. Nevertheless, consistent with the apparent objectives of the Legislature, we concur with the board that the third sentence applies only to those emotional or mental disabilities directly triggered by work-related incidents that involve no physical trauma.[9]

Even if we harbored doubt that this is the only proper reading of the provision, we would adopt the board's interpretation. Because of the well-developed legal setting in which the third sentence first appeared, its intended meaning is, at a minimum, unclear and reasonably susceptible of differing interpretations. Although it is our task to discern the meaning of an ambiguous statute, we accord substantial deference to the view of the agency charged with primary responsibility for administering it. See *Gately's Case*, 415 Mass. 397, 399 (1993); *Richard's Case*, 62 Mass. App. Ct. 701, 706 (2004). Deferring to the board in this instance is especially appropriate because the board's interpretation was made closer to the time of enactment (when the circumstances leading up to it presumably were well known), and has been subject to consistent, long-standing application. See *Connery* v. *Commissioner of Correction*, 414 Mass. 1009, 1010 (1993).

We therefore reject the self-insurer's contention that the award of compensation was based upon an error of law. To the contrary, we conclude that both the administrative judge and the board correctly viewed the case as one involving emotional and mental disability consequential to work-related physical trauma and, hence, compensable without reference to the third sentence of § 1(7A). The employee's pre-existing psychological condi-

---

[9]The end result — that the standards applicable to recovery for "pure" emotional injury are more exacting than those applicable to emotional injury occurring in conjunction with physical injury — is not unprecedented. See *Rodriguez* v. *Cambridge Hous. Authy.*, 443 Mass. 697, 698 n.3 (discussing common-law claims for emotional distress).

tion was properly taken into account by applying the fourth sentence of § 1(7A). Because the employee's compensable injury was found to remain a major cause of her ongoing emotional disability, she was entitled to receive compensation.

The other arguments raised by the self-insurer require no discussion. Suffice it to say that we have considered the self-insurer's challenges to the findings concerning causal relationship, permanent and total incapacity, deterioration, and credibility and, upon review of the entire record, find them to be without merit.

*Conclusion.* The decision of the board affirming the decision of the administrative judge awarding the employee benefits pursuant to G. L. c. 152, § 34A, is affirmed.

*So ordered.*