GILBERT DUBE'S (dependent's) CASE.

No. 06-P-728.

Suffolk. March 9, 2007. - September 12, 2007.

Present: COHEN, MILLS, & KATZMANN, JJ.

*Workers' Compensation Act,* Injuries to which act applies, Proximate cause, Suicide. *Proximate Cause.*

In an appeal by an insurer from the decision of an administrative judge award-ing worker's compensation death benefits to a claimant for her husband's work-related back injury and subsequent related pain that led to his deteriorating mental condition, unsoundness of mind, and suicide, the reviewing board of the Department of Industrial Accidents (board) cor-rectly determined, pursuant to G. L. c. 152, § 26A, that the claimant was entitled to such benefits, where there was more than sufficient evidence demonstrating that the suicide was causally connected to the unsoundness of mind resulting from the husband's work-related physical injury, and where § 26A did not require the board to consider whether the termination of the husband's employment just prior to his suicide was an independent intervening cause [123-128]; further, because the claimant presented a claim for mental injuries flowing from a physical injury, there was no merit to the insurer's argument that the award of benefits was subject to the heightened causation standards contained in the third and fifth sentences of G. L. c. 152, § 1(7A) [128-130].

APPEAL from a decision of the Industrial Accident Reviewing Board.

*William C. Harpin* for the insurer.

*Andrew J. Schultz* for the claimant.

KATZMANN, J. In this workers' compensation case, an administra-tive judge awarded the claimant, Anne Dube, benefits pursuant to G. L. c. 152, §§ 9A, 13, 13A, 30, 31, 33, & 34, for her husband Gilbert Dube's (the employee) work-related back injury and subsequent related pain that led to his deteriorating mental condi-tion, unsoundness of mind, and suicide. On appeal by the insurer from the award of death benefits under § 31, the reviewing

board of the Department of Industrial Accidents (board) affirmed, holding that, pursuant to G. L. c. 152, § 26A, the claimant was entitled to recover on account of the employee's death by suicide, because it was causally connected to the unsoundness of mind resulting from his work-related physical injury. The insurer, Professional Liability Insurance Company, now appeals the board's decision. We affirm.

*Background.* The employee, a fifty-year old machine mechanic with a history of back trouble, worked at National Fiber Technology LLC (the employer). On November 7, 2001, he reinjured his back when, while on the job, he "jerked" loose a card stuck in a knitting machine. The employee attempted to return to work on a light duty basis on November 26, 2001, but was informed at that time that no light duty work was available. The employer terminated the employee's employment on December 4, 2001. On December 18, 2001, the employee committed suicide, leaving a note.

At the hearing, the claimant introduced medical evidence, credited by the administrative judge, indicating that the employee's November 7, 2001, back injury caused him to become clinically depressed, and that the December 4, 2001, termination exacerbated his depression to the point that the employee was acting irrationally when he committed suicide.[1] Moreover, the claimant offered additional evidence, including her own testi-

---

[1]Dr. Martin Kelly, a board-certified forensic psychiatrist, issued a report and was deposed. The administrative judge summarized Dr. Kelly's opinion as follows:

"Dr. Kelly opined after his review of the [employee's medical] records [including the suicide note] and his interviews with the Employee's family members and primary care physician that the Employee's depression was causally related to his back injury of November 7, 2001. He further opined that the termination letter from his employer critically exacerbated the Employee's depression on December 4, 2001. He opined further that the Employee's depression, triggered by the injury of November 7, 2001 and substantially aggravated by the termination letter while still out of work and disabled on December 4th, resulted in his suicide . . . ."

The judge explicitly adopted the opinion of Dr. Kelly and in part the opinions of Dr. Chastain (the employee's family physician), and Dr. Cook (the employee's neurosurgeon) "that the [e]mployee's work-related back injury and subsequent related pain symptoms led to his deteriorating mental condi-

mony, credited by the administrative judge, confirming the change in the employee's behavior after the work-related injury. Based on this evidence, as well as consideration of the suicide note, the administrative judge found that the employee sustained a work-related back injury on November 7, 2001, and that the work-related injury was causally related to the employee's suicide. Although there also was medical evidence that it was the termination that "put [the employee] over the edge" and was the "predominant" cause of the depression that led to his suicide, the administrative judge's decision did not explicitly address the causal role played by the termination in prompting the employee to take his life.[2] In affirming the decision, the board stated:

> "Here the adopted medical evidence supported the judge's award of death benefits, because the doctors causally related the suicide both to the work injury and to the termination. That Drs. Kelly and Chastain put more emphasis on the termination — that it was the "predominant" cause that "substantially aggravated" the work-related depression — does not affect this analysis. The claimant established the simple causal connection required under § 26A and rightly prevailed in her § 31 claim as a result."

*Discussion.* On appeal, the insurer asserts that the administrative judge and the board incorrectly applied the simple causation

tion and an unsoundness of his mind which tragically led to the taking of his own life." The employee had been a patient of Dr. Chastain, who was certified in family practice and had done work for him. Dr. Cook was the employee's treating neurosurgeon, who testified that the employee's work injury on November 7, 2001, caused an exacerbation of his preexisting back injury. The medical opinion of Dr. Grassian, a forensic psychiatrist retained by the insurer, who reviewed the records, issued a report and gave a deposition, was considered but neither adopted nor explicitly rejected by the judge. Dr. Grassian concluded that the employee's November 7 work injury was "a minor event" and that the employee's termination "was likely a devastating blow . . . ."

[2] There was also testimony presented regarding the circumstances of the employee's termination, including testimony about his work performance, the claimant contending that the employee was terminated because of his work-related injury and because he had filed a workers' compensation claim. The administrative judge credited the testimony of a witness for the claimant that the employee was well respected by his coworkers. The administrative judge did not make a finding regarding whether the termination was a "bona fide, personnel action" under sentence five of G. L. c. 152, § 1(7A), inserted by St. 1986, c. 662, § 6. See note 3, *infra.*

test in determining the relationship between the employee's work-related injury and his suicide. The insurer argues that the medical evidence only supports a conclusion that the employee's subsequent termination was the predominant contributing factor leading to the employee's suicide, and that the judge was required to consider and find that the termination was an independent, intervening event that broke the chain of causation beginning with the employee's back injury. Furthermore, the insurer claims that because the independent, intervening termination resulted in a wholly mental personal injury, we must apply the heightened causation standards set out in the third sentence of G. L. c. 152, § 1(7A), or the prohibition on recovery set out in the fifth sentence of that section, which bars recovery for mental or emotional disabilities arising principally out of a bona fide personnel action except when such action constitutes the intentional infliction of emotional harm.[3],[4]

---

[3]In its current iteration (which is the version applicable to the claim here), G. L. c. 152, § 1(7A), as amended through St. 1991, c. 398, § 14, contains in its entirety five sentences, which we number for convenience:

> "[1] 'Personal injury' includes infectious or contagious diseases if the nature of the employment is such that the hazard of contracting such diseases by an employee is inherent in the employment. [2] 'Personal injury' shall not include any injury resulting from an employee's purely voluntary participation in any recreational activity, including but not limited to athletic events, parties, and picnics, even though the employer pays some or all of the cost thereof. [3] Personal injuries shall include mental or emotional disabilities only where the predominant contributing cause of such disability is an event or series of events occurring within any employment. [4] If a compensable injury or disease combines with a pre-existing condition, which resulted from an injury or disease not compensable under this chapter, to cause or prolong disability or a need for treatment, the resultant condition shall be compensable only to the extent such compensable injury or disease remains a major but not necessarily predominant cause of disability or need for treatment. [5] No mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury within the meaning of this chapter."

[4]As we later discuss, the board determined that the provisions of § 1(7A) were irrelevant, because they relate only to claims of emotional disability, rather than claims for death benefits as a result of suicide, which are specifically governed by § 26A. The insurer claims that this analysis was erroneous.

General Laws c. 152, § 26, states that "[i]f an employee . . . receives a personal injury arising out of and in the course of his employment, . . . he shall be paid compensation . . . ." "Dependents shall not be precluded from recovery under this chapter, nor shall the insurance company be relieved from making payment to the commonwealth under section sixty-five, for death by suicide of the employee, if it be shown by the weight of the evidence that, due to the injury, the employee was of such unsoundness of mind as to make him irresponsible for his act of suicide." G. L. c. 152, § 26A, added by St. 1937, c. 370, § 2. The dispute in the present matter concerns whether death benefits are available under § 26A on a finding that the employee's work-related physical injury was a simple "but for" cause of his suicide, even if another independent (and, according to the insurer, non-compensable) event intervened.[5] Based upon cases decided prior to the enactment of § 26A, it is the insurer's contention that an independent intervening event (in this case, the termination) may break the chain of causation, and that the judge should have confronted that issue and so found.

Beginning with *Sponatski's Case*, 220 Mass. 526 (1915), decisions predating the 1937 enactment of § 26A used the language of a tort-based independent intervening cause test in workers' compensation cases where the employee committed suicide. In *Sponatski's Case*, an employee received an injury in the course of and arising out of his employment through a splash of molten lead into his eye. He was treated at a hospital, when, as found by the Industrial Accident Board (IAB), "while insane, as a result of his injury, he threw himself from a window and was fatally injured." *Id.* at 527. On appeal, the court said that "[t]he inquiry relates solely to the chain of causation between the injury and the death," *id.* at 531, and that it was necessary to decide "whether

---

[5]A "rough working test" for simple causation is the "but for" test: the harm would not have occurred but for the defendant's actions. Harper, James, & Gray, Torts § 20.2, at 100 (3d ed. 2007). Under an independent intervening cause analysis, the chain of causation is broken when an independent action (for which the defendant is not liable) produces the harm, breaking the chain of causation. *Id.* at § 20.5(5). While the terminology of causation has been imported from the law of torts and used in workers' compensation cases, we note that the subject areas differ substantially, and that analysis in workers' compensation cases is perhaps made more complicated because of the uneasy transplantation of those terms.

the chain of causation between the injury and the death is broken by the intervention of some independent agency." *Id.* at 531-532. The question is whether "there is a new and independent agency which breaks the chain of causation arising from the injury." *Id.* at 530.

The intervening cause analysis in *Sponatski's Case* was controlling in cases of some vintage. See *Panagotopulos's Case*, 276 Mass. 600, 605 (1931) ("[t]he burden rested upon the employee of showing by a preponderance of evidence that his total incapacity . . . resulted from his original injury and not from an independent intervening cause"), citing *Sponatski's Case*, 220 Mass. at 528, 531-532. See also *Tetrault's Case*, 278 Mass. 447, 447-448 (1932) ("[t]he burden rested upon the claimant of showing that the employee's death [suicide] resulted from his injury and not from an independent intervening cause"), citing *Panagotopulos's Case*, 276 Mass. at 605. The insurer contends that under an intervening cause analysis, although the claimant established a simple causal relationship between the employee's work-related physical injury (here his back injury), the depression that led to his suicide, and his suicide, because there was medical testimony that also indicated that the employee's termination substantially aggravated his depression, the termination could operate as an intervening cause, breaking the chain of causation.

Since § 26A's enactment in 1937, Massachusetts appellate courts have not had the opportunity to address directly the effect under that provision of an intervening cause on the simple causation test. See *Oberlander's Case*, 348 Mass. 1, 4-5 & n.1 (1964) (not addressing whether an intervening cause could have disrupted showing of simple causation; distinguishing updated language of § 26A in comparison to that in effect during *Tetrault's Case*); *Lambert's Case*, 364 Mass. 832, 832 (1973) (no question of intervening cause presented). In this case, though citing and quoting the independent intervening cause language in *Tetrault's Case, supra,* and *Panagotopulos's Case, supra,* the board rejected that causation standard, instead relying on several workers' compensation cases to hold specifically that simple causation *is* sufficient under § 26A. See *Bemis* v. *Raytheon*, 15 Mass. Workers' Comp. Rep. 408 (2001); *Rizzo* v. *M.B.T.A.*, 16 Mass. Workers' Comp. Rep. 160 (2002). On this basis, the board permitted

the claimant to recover, concluding "that a suicide is within the purview of § 26A if it is simply causally connected to the unsoundness of mind resulting from the injury, without having to show any particular quantity or quality of that cause. We consider this to be the case, even in view of intervening causally related events, such as the termination in the present case."

Regarding § 26A, the board's decision notes that the section was enacted in 1937 and, quoting from *Oberlander*, 348 Mass. at 5 n.1, observes that it was enacted "unquestionably . . . in view of the rule laid down in *Sponatski's Case*, 220 Mass. [at] 530[,] and *Tetrault's Case*, 278 Mass. [at 448]." The board's decision notes that *Sponatski's Case* had held that "where there follows as the direct result of a physical injury an insanity of such violence as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy 'without conscious volition to produce death, having knowledge of the physical nature and consequences of the act,' then there is a direct and unbroken causal connection between the physical injury and the death." 220 Mass. at 530, quoting from *Daniels* v. *New York, N.H. & H.R.R.*, 183 Mass. 393, 399-400 (1903). Indeed, our cases have recognized that § 26A ameliorated the harsh voluntary wilful choice test of *Sponatski's Case* by requiring instead that dependents establish that "the employee was of such unsoundness of mind as to make him irresponsible for his act of suicide." See *McCarthy's Case*, 28 Mass. App. Ct. 213, 215 (1990) ("[section] 26A was intended to make it easier for a dependent to recover compensation in the event of an employee's suicide than it had been under the prior law"). See also *Fitzgibbons's Case*, 374 Mass. 633, 636-637 (1978).[6] However, it is noteworthy that in

---

[6]We note that the voluntary wilful-choice/intervening cause test of *Sponatski's Case* is favored in only a few States, and has increasingly been supplanted by a "chain-of-causation" rule. See Suicide As Compensable Under Workmen's Compensation Act, 15 A.L.R. 3d 616 (1967 & Supp. 2007). "The 'chain-of-causation rule,' succinctly stated, is that where the injury and its consequences directly result in the workman's loss of normal judgment and domination by a disturbance of the mind, causing the suicide, his suicide is compensable. This rule rejects the tort liability concept of fault (which stresses the independent intervening cause), and the criminal-law standard of insanity (which requires that the person not know what he is doing), substituting therefor the 'chain-of-causation' or 'but for' test and the requirement of an

enacting § 26A, the Legislature did not set forth an independent intervening cause test, but provided only that "*due to the injury*, the employee was of such unsoundness of mind as to make him irresponsible for his act of suicide" (emphasis added).

In construing what the Legislature meant by "due to," we think that the simple causation standard is consistent with the "beneficent design" of the workers' compensation statute, and the principle that provisions of that statute are to be broadly interpreted in favor of the worker. *McCarty's Case*, 445 Mass. 361, 364 (2005). We also are mindful of the agency's experience in the interpretation of statutes and regulations in this area, which makes the board's interpretation that § 26A is governed by a simple causation test, and not by independent intervening cause analysis, all the more compelling. Indeed, commentators have observed:

> "The application of [the] common law rule [permitting the chain of causation to be broken by an independent intervening cause] to claims under the Workers' Compensation Act contradicts the basic principles that compensation has no relation to fault or negligence, and that an injury is barred only by serious and wilful misconduct of the employee. Workers' compensation set up a new principle governing liability for work injuries, and common law precedents should not be applied to limit the protection afforded."

Nason, Koziol, & Wall, Workers' Compensation § 10.12, at 332-333 (3d ed. 2003).

Regarding the application of the simple causation standard here, we note that the administrative law judge was presented with more than sufficient evidence to determine that there was a causal relationship between the work-related physical injury and the subsequent suicide, such as to warrant compensability under § 26A. Moreover, the administrative judge was free to determine that the claimant's witnesses (as well as the facts that those witnesses relied on) were credible.

We turn now to the insurer's argument that this case is subject to the third and fifth sentences of § 1(7A). As noted by the board in the underlying proceeding, it is not readily apparent that these

uncontrollable 'compulsion' to commit suicide." *Id.* at 616, 631.

provisions, which, in terms, apply to claims for disability, were intended to be applied to claims for death benefits pursuant to § 26A.[7] See *Taylor's Case*, 44 Mass. App. Ct. 495, 500-501 (1998) (Legislature is presumed to be aware of effect of un-amended sections on amended sections of act). However, even assuming, arguendo, that § 1(7A) is applicable not only to claims of disability but also to claims for dependents' benefits, we conclude, based on our reading of the statute in conjunction with *Cornetta's Case*, 68 Mass. App. Ct. 107 (2007), that both the third and the fifth sentences of § 1(7A) are only applicable to wholly mental or emotional workplace injuries.

In *Cornetta's Case*, we addressed the issue whether the third sentence of § 1(7A) applied to bar a claim for compensation for pre-existing mental injuries aggravated by a physical workplace injury. 68 Mass. App. Ct. at 115-116. After reviewing the history of § 1(7A), we held that the Legislature had not intended the third sentence of the section to operate to bar emotional or mental disabilities flowing from work-related physical injuries.[8] *Id.* at 117-118. In reaching this decision, we specifically noted that the Legislature's purpose in enacting the sentence there at issue in § 1(7A) was only to "rein in compensation for work-related mental and emotional disabilities unassociated with physical injury." *Id.* at 117 (noting that Legislature's objective was to

---

[7]As the board observed, in reviewing various legislative changes to § 1(7A):

"When the legislature enacted the bona fide personnel action bar and raised the standard of proving causation in emotional disability claims to 'significant' in 1985, and when it amended that heightened standard for emotional disabilities to 'predominant' in 1991, § 26A remained untouched and intact. Where no qualifications have been added over the years to a dependent's entitlement to death benefits for a suicide under § 26A, we will not infer them."

[8]In its brief filed before *Cornetta's Case* was issued, the insurer here argued that under the third sentence of G. L. c. 152, § 1(7A), the heightened standard of causation should be applied to all emotional disabilities, both those stemming from physical injuries and those arising from "purely" emotional causes. At oral argument, we directed that the parties file submissions addressing the application of *Cornetta's Case* to their arguments. In its postargument submission, the insurer conceded that *Cornetta's Case* had disposed of its claim under the third sentence of § 1(7A), and "put to rest the argument that the employee's original depression from his back injury had to meet the heightened standard of causation in § 1(7A)." However, the insurer continues to press its argument based on the fifth sentence of § 1(7A).

overrule *Kelly's Case*, 394 Mass. 684 [1985]). We determined that this purpose was consistent with both prior and subsequent amendments to § 1(7A). See *Cornetta's Case*, 68 Mass. App. Ct. at 115-117. Applying our reasoning from *Cornetta's Case* to the present matter, we conclude that § 1(7A)'s final sentence applies merely to mental or emotional disabilities unassociated with a compensable work-related physical injury.[9] *Id.* at 117-118.

As this case is now postured, the claimant has presented a claim for mental injuries (depression leading to suicide) flowing from a work-related physical injury (the back injury). The insurer's § 1(7A) argument is inapposite, and there is thus no reason to remand this matter, as the insurer requests.[10]

The decision of the board affirming the decision of the administrative judge awarding the claimant benefits is affirmed.

*So ordered.*

---

[9]Commentators have interpreted the phrase "arising principally out of a bona fide, personnel action" as follows:

> "If the personnel action can be shown to have been other than routine or ordinary, in that the claimant was singled out for special treatment, or the notification was made in an unusual or dramatic manner that could be called a specific event, then the disability could be found compensable. Similarly, if there had been a specific event or series of specific events occurring within the employment, preceding the personnel action, and it could be shown that these were a contributing cause of the disability and that the personnel action was not the principal cause, then the disability could be found compensable."

Workers' Compensation § 9.10, at 252.

[10]As noted in note 2, *supra*, the administrative judge did not make a finding whether that action was a "bona fide, personnel action" under sentence five of § 1(7A). In light of the disposition of this appeal, there is no need that such a determination be made.