JOHN ROBERTS, Appellant, v. THE STATE INDUS-
TRIAL INSURANCE SYSTEM, an Agency of the
STATE OF NEVADA, Respondent.

No. 28889

April 9, 1998                                    956 P.2d 790

*Nancyann Leeder,* Nevada Attorney for Injured Workers, and *Creighton G. Oler,* Deputy Nevada Attorney' for Injured Workers, Carson City, for Appellant.

*Lenard T. Ormbsy,* General Counsel, State Industrial Insurance System, Carson City, and *Carolyn M. Broussard,* Associate General Counsel, State Industrial Insurance System, Carson City, for Respondent.

## OPINION

*Per Curiam:*

This court is asked to determine whether appellant is entitled to

workers' compensation benefits for treatment of anxiety or "panic attacks" suffered in connection with compensable physical injuries. On judicial review, the district court reversed an appeals officer's finding that appellant was entitled to such benefits. We reverse the district court.

## STATEMENT OF FACTS

On or about February 24, 1994, appellant, John Roberts ("Roberts"), a chiropractic assistant, was severely injured while attempting to move a three-hundred pound table at his place of employment. On March 1, 1994, J. Dennis Richey, M.D. ("Dr. Richey"), confirmed that Roberts had sustained bilateral inguinal hernias, sprain/strain, complex lumbar sprain, facet syndrome, intercostal strain, thoracic strain and cervical strain. Later that month, Malcolm Poon, M.D. ("Dr. Poon") recommended surgical reduction of the hernias. Roberts filed a claim for workers' compensation benefits with respondent, State Industrial Insurance System ("SIIS").

Shortly thereafter, Roberts began experiencing panic attacks arising from his concerns regarding the surgery.[1] These attacks took the form of sudden acute symptoms of shortness of breath, inability to swallow, profuse sweating and disorientation. Dr. Poon advised the SIIS that he would not perform the requisite surgery until Roberts could be cleared by a psychologist or psychiatrist.

In June of 1994, Marvin Glovinsky, Ph.D. ("Dr. Glovinsky"), a psychologist to whom Roberts was referred by the SIIS for the purpose of obtaining clearance for the surgery, concluded as follows: "[that the] panic attacks, by history, can be understood as having been precipitated by the prospect of his surgery and thus can be considered a reaction secondary to this industrial accident of February 24, 1994." Dr. Glovinsky recommended an extensive pre-surgery and post-surgery treatment program for Roberts, including immediate chemical intervention.

Thereafter, Timothy D. Moritz, M.D. ("Dr. Moritz"), a psychiatrist, treated Roberts on several occasions in connection with the panic disorder. Dr. Moritz concluded that Roberts' panic attack disorder was the direct result of the industrial injury he suffered on February 24, 1994. Roberts completed this treatment program in August of 1994, and was cleared for the surgery, which was successfully performed in September 1994.

Although Roberts' claim for compensation with respect to the physical injuries was accepted, the SIIS denied the claim for treatment of the panic disorder under NRS 616.5019, which

---

[1]The contemplated surgical procedures had the potential for serious complications, of which Roberts was clearly aware.

governs compensability issues arising from stress-related injuries or diseases. A hearing officer affirmed the denial of benefits.

On July 28, 1995, an appeals officer overturned the decision of the hearing officer, concluding that NRS 616.5019 did not apply and that the panic disorder was governed by the common law doctrine of "compensable consequences." Accordingly, the appeals officer ordered payment of benefits in connection with the panic disorder.

On March 20, 1997, the district court granted the petition for judicial review brought by the SIIS. The court concluded that Roberts' stress claim was barred by NRS 616.5019, and that the appeals officer was mistaken as a matter of law when he or she applied the rule of compensable consequences.

Roberts appeals, contending that the panic attacks were a direct consequence of his primary industrial back injury and, thus, are not barred from compensability under NRS 616.5019.

*Standard of Review*

On issues of fact, this court's review of an appeals officer's decision is limited to whether substantial evidence exists to support the officer's findings of fact. *See* NRS 233B.135 (discussing appellate review of administrative decisions). Accordingly, this court may not substitute its judgment for that of the appeals officer on matters of weight, credibility, or issues of fact. Apeceche v. White Pine Co., 96 Nev. 723, 615 P.2d 975 (1980). On issues of law, this court reviews an appeals officer's determination de novo. Nyberg v. Nev. Indus. Comm'n, 100 Nev. 322, 683 P.2d 3 (1984). Statutory construction is an issue of law subject to this court's de novo review. Maxwell v. SIIS, 109 Nev. 327, 849 P.2d 267 (1993).

Thus, we must defer to the appeals officer's findings of fact and independently review the scope of NRS 616.5019, which is alleged as a bar to appellant's claim for benefits.

I. *Whether NRS 616.5019 applies to bar appellant's benefits*

NRS 616.5019 (now NRS 616C.180)[2] provides in pertinent part:

> 1. Except as otherwise provided in this section, an injury or disease sustained by an employee that is caused by stress is compensable pursuant to the provisions of chapters 616A to 616D, inclusive, . . . if it arose out of and in the course of his employment.

---

[2]NRS 616.5019 was in effect at the time this case came before the district court. In 1993, NRS 616C.180 was replaced in revision for NRS 616.5019. The legislature, however, made no substantive changes thereto.

2. Any ailment or disorder caused by any gradual mental stimulus, and any death or disability ensuing therefrom, shall be deemed not to be an injury or disease arising out of and in the course of employment.

3. Any injury or disease caused by stress shall be deemed to arise out of and in the course of employment only if the employee proves by clear and convincing medical or psychiatric evidence that:

(a) He has a mental injury caused by extreme stress in time of danger;

(b) The primary cause of the injury was an event that arose out of and during the course of his employment; and

(c) The stress was not caused by his layoff, the termination of his employment or any disciplinary action taken against him.

We have yet to decide whether NRS 616.5019 bars mental disorders that arise as a direct consequence of physical injuries sustained in the workplace. Given the plain language of the statute and the evidence in this case, we conclude that NRS 616.5019 only applies to industrial injuries or diseases *caused by* work-related stress.

Roberts does not allege that his panic disorder was caused by job-related stress. Rather, he argues that his panic attacks were precipitated by the need for surgical correction of his physical injuries. Competent evidence before the appeals officer supports this finding. Dr. Moritz, expressed the following in his report of August 29, 1994:

> Claimant had no prior history of psychiatric or other mental health related treatment. He was a well functioning chiropractor. He had previously always been emotionally stable. *His psychiatric disorder developed as a result of his industrial injury.*

Dr. Glovinsky reached a similar conclusion. Thus, the appeals officer correctly determined that subsection (2) of NRS 616.5019, prohibiting compensation for "gradual mental stress" injuries, did not apply to this claim for benefits.

The record further confirms the appeals officer's finding that there was no evidence the panic disorder was caused by any gradual mental stimulus preceding the industrial accident.

Accordingly, we hold that the plain language of the statute is restricted to injuries *caused by* job-related stress in specific enumerated circumstances. The prohibitions of the statute do not apply where, as here, a compensable, physical injury precipitates

or *causes* a medically diagnosed psychological disorder, and particularly where that disorder must be treated to facilitate treatment of the worker's physical maladies.

The legislative history of NRS 616.5019 suggests that the legislature intended to address fraudulent claims and claims arising from normal stress incident to employment. We conclude that nothing in the legislative history of this measure suggests an intent to preclude the payment of benefits in connection with psychiatric disorders which are a reasonable sequelae of a compensable physical injury.

## II.  *The common law doctrine of compensable consequences*

In Nevada, compensation for consequential injuries was created in common law. *See* Imperial Palace v. Dawson, 102 Nev. 88, 91, 715 P.2d 1318, 1320 (1986) (holding that a claimant is entitled to receive SIIS benefits for any foreseeable consequence of a work-related injury).

The appeals officer concluded that the panic disorder experienced by Roberts was compensable because it was a direct and natural result of his compensable injuries. This conclusion is entitled to deference because it is supported by substantial evidence. *See* Frances v. Plaza Pacific Equities, 109 Nev. 91, 94, 847 P.2d 722, 724 (1993) (holding that issues of proximate cause are usually factual issues to be determined by the trier of fact); *see also* Apeceche v. White Pine Co., 96 Nev. 723, 725, 615 P.2d 975, 977 (1980) (holding that this court's review of an appeals officer's finding of fact is limited to whether substantial evidence exists to support the finding).

## CONCLUSION

We conclude that substantial medical evidence exists to support the conclusion of the appeals officer that Roberts' panic disorder was a genuine sequelae of his physical injuries and that the disorder created a reasonable medical obstacle to the surgery recommended by his physicians. We also conclude that the appeals officer was correct in his application of NRS 616.5019 and the doctrine of "compensable consequences."

Accordingly, we reverse the order of the district court.

SPRINGER, C. J., dissenting:

I agree with the appeals officer and the district court that NRS 616.5019 applies to this case and that Mr. Roberts is not entitled to recover for the expense of his "panic attacks," whether they were or were not brought on by his fear of the surgical knife.

I find no need to delve into the legislative history discussed in some detail in the respondent's brief; to me it is clear that the

conditions imposed by NRS 616.5019 have not been fulfilled in this case. The statute requires (1) "clear and convincing medical or psychiatric evidence," that the claimant "has a mental injury caused by extreme stress in time of danger," and (2) evidence that the "primary cause of the injury was an event that arose out of and during the course of employment." NRS 616.5019(3). There is no evidence here of a "mental injury"; and there is no event arising out of Mr. Robert's employment that can be identified as the "primary" cause of Mr. Robert's so-called "mental injury."

First, I am unable to identify in this case any evidence of "mental injury" (whatever that might be). As pointed out in the majority opinion, Mr. Roberts started experiencing "panic attacks" when he learned that he was going to have to undergo hernia surgery. It is hard for me to understand how fear of remedial surgery can be called a "mental injury." Even if fear of impending surgery were a mental injury, the "injury" in this case was not "caused by extreme stress in time of danger." The statutory language contemplates a psychological reaction to an incident in which the claimant suffered "extreme stress," which came about, on the job, during a "time of danger." As I see it, none of the statutory requirements are fulfilled; and, further, it does not seem right to me, aside from the absence of clear requirements that are stated in the statute, that coverage can be rightfully extended to persons who develop abnormal fears of relatively simple surgical procedures.

Finally, I would note that if Mr. Roberts did suffer a "mental injury," the remedial surgery required by his industrial accident could not have been, as required by the statute, the *primary* cause of his panic attacks. The panic attacks, according to Dr. Marvin Glovinsky, were "*secondary* to this industrial accident"— secondary, not primary. (My emphasis.) I would affirm the judgment of the trial court.