OPINION
 

 By the Court,
 

 Parraguirre, J.:
 

 In this appeal, we address a single issue of first impression: whether and under what circumstances surviving family members may recover workers’ compensation death benefits if an injured employee commits suicide as the result of an industrial injury. While workers’ compensation benefits are generally available for accidental employee deaths, under NRS 616C.230(1), Nevada’s
 
 *555
 
 willful self-injury exclusion, the employee’s surviving family members are precluded from recovering benefits if the employee’s death results from a “willful intention to injure himself.” Although we have not previously addressed the scope of this exclusion, we now conclude that suicides are not willful for purposes of NRS 616C.230(1) if a sufficient chain of causation has been established. Under this construct, a claimant must demonstrate that (1) the employee suffered an industrial injury, (2) the industrial injury caused some psychological condition severe enough to override the employee’s rational judgment, and (3) the psychological condition caused the employee to commit suicide. In light of this newly announced standard, we reverse the district court’s order denying judicial review and remand this matter so that the appeals officer may conduct further proceedings.
 

 FACTS AND PROCEDURAL HISTORY
 

 After undergoing extensive treatment for pain related to a back injury that he incurred when he slipped on a flight of stairs while working as a bartender for respondent Flamingo Hilton-Laughlin, Danny Vredenburg committed suicide. Before ending his own life, Danny recovered industrial insurance benefits for his back injury. The compensability of that injury is, therefore, undisputed.
 

 Following his accident on the stairway, Danny began to experience neck and lower back pain and was diagnosed with internal disc derangement at several locations along his spine. Danny then underwent a 360-degree anterior-posterior fusion surgery. Despite his fusion surgery, Danny continued to experience pain.
 

 When advised that additional surgical procedures could not offer him any further relief, Danny consulted a series of pain management specialists, who prescribed him pain medication and muscle relaxants. Still experiencing pain, however, Danny consulted Dr. Daniel Kim and was diagnosed with “failed back syndrome.” In his medical evaluation, Dr. Kim noted that Danny’s current regimen of care — consisting mainly of pain medication and pain management therapy — could not effectively address Danny’s clinical condition.
 

 Pursuing a more aggressive approach, Dr. Kim recommended an anti-inflammatory agent, stronger pain medication, and an antidepressant to counteract Danny’s paradoxical reaction to his muscle relaxants, which kept him awake. Later, when the pain did not subside, Danny elected to surgically implant a morphine infusion pump in his spine and undergo a round of epidural steroid injections.
 

 According to Dr. Kim, however, even with these additional procedures, Danny’s lower back pain was “intractable.” Moreover, because of the chronic nature of this pain, in Dr. Kim’s view, Danny had become “psychologically de-stabilized.” Recognizing
 
 *556
 
 that, as a result, Danny was unfit to return to work, Dr. Kim recommended that Danny claim permanent disability status, and he informed the Flamingo of Danny’s condition. In the month that followed, Danny committed suicide by a self-inflicted gunshot wound to the head.
 

 Before ending his own life, Danny composed several suicide notes expressing his need to be at peace, and he called a longtime friend, telling him that ‘ ‘he could no longer take the pain and all of his pain medications.’ ’ According to the friend, Danny had become dependent on his pain medication, which tended to increase his mobility but “made [Danny] think funny.”
 

 According to others who knew him, until his fusion surgery, Danny was sociable and extroverted. After his surgery, by contrast, Danny was a “different person,” as his life had become “dominated by the pain from his injury.” Furthermore, as recorded in the affidavits of coworkers and friends, Danny became increasingly humorless and withdrawn. He was unable to eat and lost weight, his self-esteem decreased, and his physical appearance deteriorated. Walking became difficult and painfiil, one coworker observed, and with each movement Danny noticeably suffered.
 

 In Dr. Donovan Anderson’s medical opinion, Danny “committed suicide as a result of [ongoing] intractable pain that was unrelenting.” Based on Dr. Anderson’s opinion, appellant Sharon Vredenburg, Danny’s surviving spouse, filed a claim for death benefits, asserting that Danny “took his own life because he was in so much pain from his industrial injury.’ ’ Noting that Dr. Anderson’s opinion lacked a medical rationale linking Danny’s suicide to his industrial injury, the Flamingo’s insurance administrator denied the claim.
 

 After a hearing officer affirmed the claim denial, Vredenburg appealed to an appeals officer, and the parties were directed to address the compensability of industrially related suicides in Nevada. Although at the time no controlling test existed, Vredenburg argued that Danny’s suicide was compensable under the chain-of-causation test outlined by the Arizona Supreme Court in
 
 Graver Tank & Manufacturing Co. v. Industrial Commission.
 

 [2]
 

 Disagreeing with Vredenburg, the appeals officer affirmed the claim denial, concluding that (1) the chain-of-causation test was not binding in Nevada; (2) even if it was,
 
 Graver Tank
 
 was distinguishable because Danny’s suicide was deliberate instead of the product of insanity; and (3) Vredenburg failed to present conclusive evidence that Danny was devoid of normal judgment and dominated by a disturbance of mind directly caused by his industrial injury. Vredenburg unsuccessfully petitioned for judicial review in the district court. This appeal followed.
 

 
 *557
 

 DISCUSSION
 

 In this appeal, we consider whether NRS 616C.230(1), Nevada’s willful self-injury exclusion, precludes surviving family members from recovering death benefits for employee suicides that are causally connected to an industrial industry. Answering this question in the negative, we next consider how to determine when a suicide is sufficiently causally connected to an industrial injury to qualify an employee’s survivors for death benefits. For the reasons set forth below, we adopt the chain-of-causation test and thereby join the majority of states that have considered the compensability of suicides under willful self-injury exclusions analogous to our own.
 

 Standard of review
 

 Like the district court, we review an appeals officer’s decision in a workers’ compensation matter for clear error or an abuse of discretion.
 
 [3]
 
 An appeals officer’s fact-based conclusions of law are entitled to deference and will not be disturbed if supported by substantial evidence.
 
 [4]
 
 In conducting this review, we are confined to the record before the appeals officer, and we may not substitute our judgment for that of the appeals officer as to the weight of the evidence on a question of fact.
 
 [5]
 
 Pure questions of law, however, like the one considered below, we review de novo.
 
 [6]
 

 NRS 616C.230(1)
 
 — Nevada’s
 
 willful self-injury exclusion
 

 In Nevada, workers’ compensation death benefits are payable to eligible survivors for the death of an employee caused by any “injury by accident arising out of and in the course of employment.”
 
 [7]
 
 This rule, however, is not without limitation. Under NRS 616C.230(1), Nevada’s willful self-injury exclusion, an employee’s death is not compensable if, instead of resulting from an original industrial accident, it results from a “willful intention” to inflict self-injury.
 

 Notably, we have not had occasion to consider whether and under what circumstances suicides can be deemed to be caused by an industrial accident and considered nonwillful under NRS 616C.230(1), thus qualifying the employee’s survivors for death benefits. Despite this lack of guidance, the parties here acknowl
 
 *558
 
 edge that certain suicides may not be willful within the meaning of NRS 616C.230(1) if they are sufficiently causally connected to an industrial injury, a conclusion with which we agree.
 
 [8]
 
 The parties disagree, however, with respect to whether we should adopt the more restrictive, minority approach for determining causation, known as the “voluntary willfhl choice” test, or the modern majority position, referred to as the chain-of-causation test.
 

 The voluntary willful choice test
 

 The more restrictive, minority test governing the compensability of suicides originated with the Massachusetts Supreme Court decision,
 
 In re Sponatski,
 

 [9]
 

 and contains two basic prongs. Under this voluntary willful choice test, a suicide is compensable only if it (1) resulted from an uncontrollable impulse or delirium of frenzy, and (2) occurred without the employee’s knowledge of the physical consequences of his or her actions.
 
 [10]
 

 While the first prong of this test addresses an employee’s volition, the second prong relates to an employee’s understanding.
 
 [11]
 
 If either prong is not met, the suicide acts as an independent intervening cause severing the relationship between the employee’s death and the industrial
 
 injury.
 

 [12]
 

 For the reasons discussed below, however, both prongs are problematic in the modern workers’ compensation context and have been modified or abandoned in recent years as jurisdictions have gradually converged on some version of the chain-of-causation test.
 

 Because the first prong of the voluntary willful choice test requires a complete absence of volition, courts applying this test traditionally were certain about compensating only suicides whose spontaneity and violence demonstrated that the employee was afflicted with a psychological condition approximating insanity at the
 
 *559
 
 time the suicidal act was performed.
 
 [13]
 
 However, by relying on spontaneity and the method of self-destruction as aids in determining volition, this test excludes suicides that might otherwise be causally connected to an industrial injury simply because the method used was undramatic or because the two events were separated by a significant period of time.
 

 In addition to recognizing the first prong’s underinclusiveness, we also note the common criticism of this test’s second prong. Specifically, by requiring a claimant to demonstrate that an employee did not understand the consequences of the suicidal act, the second prong imports an overly restrictive criminal law standard of insanity into a remedial context.
 
 [14]
 
 Since, however, concepts of fault are alien to workers’ compensation laws,
 
 [15]
 
 the only legal issue in suicide compensation cases is causation. Whether an employee understood the consequences of committing suicide is irrelevant to whether the act was caused by an original industrial injury.
 

 Based on these and other concerns, the voluntary willful choice test has been either modified or abandoned by a majority of states that have considered the compensability of suicides under their respective willful self-injury exclusions.
 
 [16]
 
 In states where the test has been modified, the first prong is relaxed and the second prong is practically eliminated.
 
 [17]
 
 By eliminating the second prong, and relaxing the first, these states adhere to the functional equivalent of the chain-of-causation test. Joining this trend, we reject the voluntary willful choice test and instead embrace the chain-of-causation test set forth below.
 

 The chain-of-causation test
 

 The chain-of-causation test requires the claimant to establish an unbroken chain of causation between an industrial injury and the employee’s eventual suicide.
 
 [18]
 
 Although the test varies slightly across the states that employ it,
 
 [19]
 
 Vredenburg urges us to adopt its
 
 *560
 
 most common formulation, which is outlined in
 
 Graver Tank & Manufacturing Co.
 
 v.
 
 Industrial
 
 Commission.
 
 [20]
 

 In
 
 Graver
 
 Tank, the Arizona Supreme Court criticized the voluntary willful choice test for failing to recognize “the role which pain or despair may play in breaking down a rational mental process.”
 
 [21]
 
 The court then renounced that test in favor of a “better rule” that would compensate suicides if “the original work-connected injuries suffered by the employee result in his becoming devoid of normal judgment and dominated by a disturbance of mind directly caused by his injury and its consequences, such as severe pain and despair.’ ’
 
 [22]
 

 This formulation of the test requires the claimant to demonstrate that (1) the employee suffered an industrial injury, (2) the industrial injury caused some psychological condition severe enough to override the employee’s rational judgment,
 
 [23]
 
 and (3) the psychological condition caused the employee to commit suicide.
 
 [24]
 

 For the following reasons, we adopt this formulation of the chain-of-causation test. First, unlike the voluntary willful choice test, volition and knowledge problems under the chain-of-causation test are largely eliminated. Since an industrial injury and its consequences may suppress an employee’s will to resist the impulse to commit suicide, a claimant may recover under this test even if the employee’s choice to commit suicide was deliberate.
 
 [25]
 
 In acknowledging human psychology’s role in causation, this test is widely recognized to accord with principles of modern medicine.
 
 [26]
 

 Second, the test closely aligns with the remedial purpose of Nevada’s workers’ compensation scheme.
 
 [27]
 
 Under the voluntary willful choice test, work-related suicides are analyzed as potential independent intervening causes, and thus are viewed through the
 
 *561
 
 conceptual lens of tort liability.
 
 [28]
 
 However, in recognizing “the role which pain and despair can play in breaking down the rational mental processes,”
 
 [29]
 
 the chain-of-causation test has no analytical kinship with tort concepts of fault. Because of this feature, the chain-of-causation test accords with the basic policy of this state’s workers’ compensation scheme: to deliver “economic assistance to persons who suffer disability or death as a result of their employment,”
 
 [30]
 
 regardless of fault, in exchange for limiting the tort liability of employers.
 
 [31]
 

 Third, the chain-of-causation test neatly harmonizes with our doctrine of compensable consequences, which permits claimants to recover for an employee’s subsequent health conditions — physical or mental — caused by the employee’s original industrial accident.
 
 [32]
 
 Thus, by requiring a causal connection between an industrial injury, a resulting psychological condition, and an employee’s eventual suicide, this test is a logical extension of our workers’ compensation jurisprudence regarding the compensability of subsequent employee injuries.
 
 [33]
 

 For these reasons, we conclude that the chain-of-causation test, as articulated above, most accurately reflects the compensability of work-related suicides in Nevada, and we hereby adopt that test. In accord with the evidentiary burdens under this state’s workers’ compensation scheme,
 
 [34]
 
 the claimant must satisfy this test’s three-part showing by a preponderance of the evidence.
 

 Appeals officer’s decision
 

 Having concluded that workers’ compensation death benefits are available for suicides sufficiently connected to an industrial injury, and having adopted the chain-of-causation test for determining whether a sufficient work connection exists, we next consider the appeals officer’s denial of Vredenburg’s claim for death benefits. The appeals officer purported to base her decision on the same chain-of-causation test we have adopted today. Nevertheless,
 
 *562
 
 Vredenburg asserts that the appeals officer’s application of the test was clearly erroneous and that her fact-based conclusions were not supported by substantial evidence. We agree.
 

 While purporting to analyze Vredenburg’s claim under the chain-of-causation test and attempting to distinguish this case from
 
 Graver Tank,
 
 the appeals officer, in effect, applied the stricter voluntary willful choice test. The appeals officer concluded that Vredenburg failed to establish a sufficient work connection under the chain-of-causation test because Danny’s “suicide was the result of a
 
 deliberate decision
 
 on his part and not an act of
 
 insanity
 
 .”
 
 [35]
 
 As we explained above, however, whether an employee acts deliberately is irrelevant under the chain-of-causation test. Moreover, the psychological condition linking a suicide and an industrial injury under this test may be significantly less severe, clinically, than insanity.
 

 Apparently relying on this distorted version of the chain-of-causation test, the appeals officer then imposed a spurious evidentiary requirement on Vredenburg. Specifically, the appeals officer concluded that Vredenburg failed to present
 
 “conclusive evidence
 
 establishing that [Danny] was devoid of normal judgement and dominated by a disturbance of mind directly caused by his industrial injury as required by the
 
 Graver Tank
 
 standard.”
 
 [36]
 
 However, nothing in
 
 Graver Tank
 
 supports the requirement of “conclusive” evidence. Indeed, under NRS 616C. 150(1), so long as the preponderance of the evidence would lead a reasonable mind to conclude that a causal nexus exists, the evidence supporting an appeals officer’s decision in Nevada need not be conclusive, and may even be conflicting.
 
 [37]
 
 For these reasons, the appeals officer clearly erred by misapplying the chain-of-causation test in this case.
 

 Similarly, we conclude that substantial evidence does not support the appeals officer’s finding of fact that Danny’s “suicide consti
 
 *563
 
 tuted a deliberate decision on his part,” which suggests that the appeals officer concluded that Danny’s suicide must have stemmed from a source other than his industrial injury. Notably, the record before the appeals officer contained Dr. Kim’s medical evaluations, the medical opinion of Dr. Anderson, and the affidavits of multiple friends and coworkers, which together implicate many of the hallmarks of a compensable suicide under the chain-of-causation test: an irreversible injury, unrelenting pain, a possible psychoactive reaction to prescribed medication, and extreme depression.
 

 Although we are restrained from reweighing this evidence on appeal,
 
 [38]
 
 we discuss it only for contrastive purposes. In contrast to Vredenburg, the Flamingo presented little, if any, evidence to counter the causal narrative displayed by Vredenburg’s evidence. The Flamingo failed, for example, to present evidence suggesting that Danny had preexisting health conditions — physical or mental— which could have supported an alternative theory for taking his own life.
 
 [39]
 
 Since the Flamingo failed to present evidence of this type, the appeals officer’s finding — which suggested that Danny’s suicide was attributable to a source other than his industrial injury and its aftermath — is unsupported in the record.
 

 CONCLUSION
 

 We conclude that suicides may be nonwillful deaths under Nevada’s workers’ compensation law if they are sufficiently causally connected to an industrial injury. In reaching this conclusion, we adopt the chain-of-causation test to determine whether a sufficient causal connection exists. With respect to the appeals officer’s decision in this case, we conclude that it was based on a clearly erroneous application of the chain-of-causation test and is unsupported in the record. Accordingly, we reverse the district court’s order denying Vredenburg’s petition for judicial review and remand this matter with instructions to the district court to, in turn, remand the matter to the appeals officer for proceedings consistent with the standard announced in this opinion.
 

 Gibbons, C. J., Maupin, Hardesty, Douglas and Cherry, JJ., concur.
 

 [2]
 

 399 P.2d 664, 668 (Ariz. 1965).
 

 [3]
 

 Manwill
 
 v.
 
 Clark County,
 
 123 Nev. 238, 241, 162 P.3d 876, 879 (2007).
 

 [4]
 

 Id.
 
 “Substantial evidence is evidence that a reasonable person could accept as adequately supporting a conclusion.”
 
 Id.
 
 at 241 n.4, 162 P.3d at 879 n.4.
 

 [5]
 

 Id.
 
 at 241-42, 162 P.3d at 879.
 

 [6]
 

 Id.
 
 at 242, 162 P.3d at 879.
 

 [7]
 

 NRS 616C.505.
 

 [8]
 

 Our jurisprudence in the area of workers’ compensation has always viewed the compensability of a consequential injury — physical or mental — relative to its causal connection to the original industrial accident.
 
 Roberts v. SIIS,
 
 114 Nev. 364, 368-69, 956 P.2d 790, 792-93 (1998);
 
 Imperial Palace
 
 v.
 
 Dawson,
 
 102 Nev. 88, 91, 715 P.2d 1318, 1320 (1986);
 
 see generally
 
 Leslie A. Bradshaw, Annotation,
 
 Suicide as Compensable Under Workmen’s Compensation Act,
 
 15 A.L.R.3d 616, 621 § 3(a) (electronically updated as of 2008, originally published in 1967) (all jurisdictions agree that consequential injuries, including death by suicide, are compensable to the extent that they were caused by an original industrial accident).
 

 [9]
 

 108 N.E. 466, 468 (Mass. 1915).
 

 [10]
 

 2 Arthur Larson & Lex K. Larson,
 
 Larson’s Workers’ Compensation Law
 
 § 38.02[2], at 38-5 (2007) [hereinafter
 
 Workers’ Compensation Law],
 
 These two prongs were distilled from
 
 Sponatski
 
 by later commentators and courts.
 
 See, e.g., Saunders v. Texas Employers’ Ins. Ass’n,
 
 526 S.W.2d 515, 517 (Tex. 1975) (citing this distillation with approval).
 

 [11]
 

 Workers’ Compensation Law
 
 § 38.02[2], at 38-6.
 

 [12]
 

 Saunders,
 
 526 S.W.2d at 517.
 

 [13]
 

 Workers’ Compensation Law
 
 § 38.02[1], at 38-4.
 

 [14]
 

 See id,
 
 § 38.02[2], at 38-6; Bradshaw, 15 A.L.R.3d at 621 § 3(a).
 

 [15]
 

 See Hansen v. Harrah’s,
 
 100 Nev. 60, 64, 675 P.2d 394, 397 (1984).
 

 [16]
 

 Workers’ Compensation Law
 
 § 38.02[2], at 38-7;
 
 see Saunders,
 
 526 S.W.2d at 517;
 
 Schwab v. Department of Labor and Industries,
 
 459 P.2d 1, 6 (Wash. 1969).
 

 [17]
 

 Workers’ Compensation Law
 
 § 38.02[2], at 38-7.
 

 [18]
 

 Id.
 
 § 38.02[1], at 38-5;
 
 Modern Worker’s Compensation
 
 § 115:5, at 6 (1993).
 

 [19]
 

 States’ versions of the chain-of-causation test differ, most notably, regarding the severity of the psychological condition required to establish the intermediate link between an industrial injury and a suicide. This difference is expressed in the use of varying terms to describe this psychological condition, ranging, for example, from a “disturbance,” to a “derangement,” to an “unsoundness” of mind.
 
 See Workers’ Compensation Law
 
 § 38.02[1], at 38-3.
 

 [20]
 

 399 P.2d 664, 668 (Ariz. 1965).
 

 [21]
 

 Id.
 
 at 667-68.
 

 [22]
 

 Id.
 
 at 668.
 

 [23]
 

 Notably, although
 
 Graver Tank
 
 mentioned only pain and despair, later courts have explicitly concluded that an employee’s rational judgment may be overridden by depression, as well as a psychoactive reaction to prescription medication.
 
 See, e.g., Delaware Tire Center v. Fox,
 
 411 A.2d 606, 607 (Del. 1980);
 
 Kahle
 
 v.
 
 Plochman, Inc.,
 
 428 A.2d 913, 916 (N.J. 1981);
 
 Saunders
 
 v.
 
 Texas Employers’ Ins. Ass’n,
 
 526 S.W.2d 515, 517 (Tex. 1975);
 
 Schwab v. Department of Labor and Industries,
 
 459 P.2d 1, 6 (Wash. 1969).
 

 [24]
 

 See Modem Worker’s Compensation
 
 § 115:5, at 6 (1993);
 
 see, e.g., Stalworth
 
 v.
 
 W.C.A.B. (County of Delaware),
 
 815 A.2d 23, 28 (Pa. Commw. Ct. 2002);
 
 Ahn v. Frito-Lay, Inc.,
 
 756 P.2d 40, 41 (Or. Ct. App. 1988).
 

 [25]
 

 See Delaware Tire Center,
 
 411 A.2d at 607.
 

 [26]
 

 See Saunders,
 
 526 S.W.2d at 517.
 

 [27]
 

 See, e.g., Gallagher v. City of Las Vegas,
 
 114 Nev. 595, 600, 959 P.2d 519, 521 (1998);
 
 In re Dube’s Case,
 
 872 N.E.2d 1171, 1176 (Mass. App. Ct. 2007);
 
 Globe Sec. Systems Co. v. W.C.A.B.,
 
 544 A.2d 953, 957 (Pa. 1988).
 

 [28]
 

 Leslie A. Bradshaw, Annotation,
 
 Suicide as Compensable Under Workmen’s Compensation Act,
 
 15 A.L.R.3d 616, at 621 § 3(a) (electronically updated as of 2008, originally published in 1967).
 

 [29]
 

 Id.
 
 at 622.
 

 [30]
 

 Gallagher,
 
 114 Nev. at 600, 959 P.2d at 521.
 

 [31]
 

 Hansen v. Harrah’s,
 
 100 Nev. 60, 64, 675 P.2d 394, 397;
 
 see also In re Dube’s Case,
 
 872 N.E.2d at 1176;
 
 Globe Sec. Systems Co.,
 
 544 A.2d at 957.
 

 [32]
 

 See Roberts
 
 v.
 
 SIIS,
 
 114 Nev. 364, 368-69, 956 P.2d 790, 792-93 (1998);
 
 Imperial Palace
 
 v.
 
 Dawson,
 
 102 Nev. 88, 91, 715 P.2d 1318, 1320 (1986).
 

 [33]
 

 In this, we conclude that our adoption of the chain-of-causation test is in harmony with the requirement of a neutral, rather than a liberal, construction of the Nevada Industrial Insurance Act.
 
 See
 
 NRS 616A.010(2).
 

 [34]
 

 See NRS 616C. 150(1).
 

 [35]
 

 Emphases added.
 

 [36]
 

 Emphasis added.
 

 [37]
 

 See McClanahan v. Raley’s, Inc.,
 
 117 Nev. 921, 925-26, 34 P.3d 573, 576 (2001) (“ ‘[Preponderance of the evidence’ merely refers to ‘[t]he greater weight of the evidence.’” (quoting
 
 Black’s Law Dictionary
 
 1201 (7th ed. 1999)). Furthermore, to the extent the appeals officer’s decision suggests that
 
 Graver Tank
 
 requires expert medical testimony to succeed under the chain-of-causation test, we disagree. As one recent Arizona appellate court noted when applying
 
 Graver Tank,
 
 expert medical testimony is not necessary where causation is clearly apparent without it.
 
 T. W.M. Custom Framing v. Industrial Com’n,
 
 6 P.3d 745, 749 (Ariz. Ct. App. 2000);
 
 see United Exposition Service Co. v. SIIS,
 
 109 Nev. 421, 424-25, 851 P.2d 423, 425 (1993) (requiring medical testimony
 
 or
 
 sufficient facts to demonstrate the causal connection between an industrial injury and a subsequent injury);
 
 see also Workers’ Compensation Law
 
 § 38.05, at 38-18.
 

 [38]
 

 See
 
 Manwill v. Clark County,
 
 123 Nev. 238, 241, 162 P.3d 876, 879 (2007).
 

 [39]
 

 Instead, the Flamingo contends that Vredenburg failed to make out a prima facie case under the chain-of-causation test by failing to present expert medical testimony regarding Danny’s psychological condition. However, since expert medical testimony is not necessarily required to succeed under the chain-of-causation test if causation is apparent from other evidence, Vredenburg’s failure in this regard was not fatal to her claim.
 
 See T.W.M. Custom Framing,
 
 6 P.3d at 749;
 
 United Exposition Service Co.,
 
 109 Nev. at 424-25, 851 P.2d at 425;
 
 Workers’ Compensation Law
 
 § 38.05, at 38-18.